In the Matter of the Adoption of
S.K.N., A MINOR CHILD

No. COA12-275

Filed 4 December 2012

**Adoption—statutory requirements—consent of biological father required**

The trial court did not err by concluding that respondent biological father's consent was required for the adoption of his minor child. Respondent satisfied the requirements of N.C.G.S. § 48-3-601, thereby necessitating his consent for the adoption of his son.

Appeal by petitioners from order entered 29 September 2011 by Judge C. Thomas Edwards in Catawba County District Court. Heard in the Court of Appeals 12 September 2012.

IN RE S.K.N.

[224 N.C. App. 41 (2012)]

*Manning, Fulton & Skinner, P.A., by Michael S. Harrell, for petitioners-appellants.*

*Sigmon, Clark, Mackie, Hanvey & Ferrell, P.A., by Jason White, for respondent-appellee.*

*Catawba County Department of Social Services, by Lauren Vaughan, amicus curiae.*

HUNTER, Robert C., Judge.

Petitioners-appellants Nolan and Melissa Nance ("petitioners") appeal from the trial court's order concluding that the consent of respondent-appellee Herbert Wiley Sigmon, IV ("respondent") is required for the adoption of his minor child, Steven[1]. After careful review, we affirm.

## Background

The majority of the facts of this case are not in dispute and establish the following[2]: Before the birth of their child Steven, respondent and Carrie Godwin ("Ms. Godwin") had cohabitated for more than nine years and produced two other children, but they never married. From November 2008 until Steven's birth in July 2009, respondent and Ms. Godwin occupied separate bedrooms of their shared residence. Their relationship was described by the trial court as being "punctuated by chronic episodes of domestic violence, substance abuse, and 'out of relationship' affairs."

When Ms. Godwin learned that she was pregnant with Steven, she was afraid to tell respondent; she planned on keeping the pregnancy a secret and giving the child up for adoption. As her weight gain from the pregnancy became obvious, Ms. Godwin continued to deny that she was pregnant, insisted that she was simply " 'gaining weight,' " and expressed "outrage" when questioned about it. Instead of admitting that she was pregnant, Ms. Godwin eventually resorted to telling people that she had been diagnosed with a tumor and that she was receiving treatment for it.

---

1. "Steven" is a pseudonym used to protect the identity of the minor, S.K.N.

2. We take judicial notice of the record on appeal in the first appeal of this matter, *In re Adoption of S.K.N.*, ___ N.C. App. ___, 714 S.E.2d 274 (2011) (No. COA10-1515) (unpublished). *See, e.g., Four Seasons Homeowners Ass'n, Inc. v. Sellers*, 72 N.C. App. 189, 190, 323 S.E.2d 735, 737 (1984) ("[O]ur appellate courts may take judicial notice of their own records. . . .").

**IN RE S.K.N.**

[224 N.C. App. 41 (2012)]

Meanwhile, Ms. Godwin sought assistance from Catawba County Department of Social Services ("DSS") to which she reported that respondent was *not* the biological father of the child and that she was fearful of the effects on her family life if respondent learned that she had been impregnated by another man. Ms. Godwin was also concerned that some of respondent's family members worked at the Catawba County hospitals, and DSS assisted Ms. Godwin with locating medical services outside of the county. On 11 July 2009, Ms. Godwin traveled to Iredell County, gave birth to Steven, and returned home that same day without the child.

On 18 August 2009, respondent discovered photographs of Steven and the relinquishment for adoption that Ms. Godwin had signed on 13 July 2009. Upon viewing the photographs, respondent believed that Steven was his child as Steven looked similar to respondent's two daughters. Respondent called his mother and his stepmother, told them he believed Steven was his child, and sought their advice on how to get custody of his child. Respondent's mother testified that, because respondent was too emotional to call DSS, she called DSS on respondent's behalf on 19 August 2009, the day after respondent discovered the photographs. Respondent's mother informed DSS that respondent believed he was Steven's father and that respondent did not want Steven to be adopted. DSS informed respondent's mother that they could not discuss the matter unless respondent retained an attorney.

On 20 August 2009, petitioners filed a petition with the Catawba County Clerk of District Court seeking to adopt Steven. In December 2009, DNA testing confirmed that respondent is Steven's biological father. Respondent filed a motion to dismiss the adoption petition arguing that his consent was required for petitioners' adoption of Steven. A hearing on the motion was held in Catawba County District Court before Judge C. Thomas Edwards. Judge Edwards entered an order on 21 July 2010 concluding that respondent's consent was required for the adoption of Steven as he had acknowledged paternity of the child, provided reasonable and consistent support for the mother, and regularly visited or communicated with the mother in accordance with N.C. Gen. Stat. § 48–3–601. Petitioners appealed the order to this Court, and that appeal was the subject of *In re Adoption of S.K.N.*, ___ N.C. App. ___, 714 S.E.2d 274 (2011) (No. COA10-1515) (unpublished) (hereinafter "*S.K.N. I*").

In *S.K.N. I*, we concluded the record lacked any evidence to support the trial court's conclusion that respondent had retained an

attorney *before* petitioners filed their petition for adoption. *Id.* at ___, 714 S.E.2d at *4. We held that while "respondent's two separate declarations to his mother and his stepmother, combined with his mother's call to DSS on his behalf, [were] sufficient to establish an acknowledgement under N.C. Gen. Stat. § 48–3–601(2)[,]" it was not possible to determine if the trial court would have found in favor of respondent had it not considered the unsupported finding of fact that respondent had retained an attorney before the filing of the adoption petition. *Id.* We therefore vacated the trial court's order and remanded the matter for a determination of whether the trial court would have held that the declarations and phone call were sufficient to constitute an acknowledgement of paternity. *Id.*

On remand and without hearing additional evidence or arguments, the trial court concluded that respondent's declarations to his mother and stepmother and his mother's phone call to DSS were sufficient to establish his acknowledgment of paternity under N.C. Gen. Stat. § 48–3–601(2). Additionally, the trial court concluded that respondent satisfied the financial support and visitation or communication requirements of N.C. Gen. Stat. § 48–3–601(2) and thereby established that his consent to the adoption of Steven was required. From this order, petitioners appeal.

### Discussion

As required by N.C. Gen. Stat. § 48–3–601 (2011), before a petition for adoption of a minor can be granted certain individuals must provide consent to the adoption. In a direct placement adoption, the statute requires the consent of "[a]ny man who may or may not be the biological father of the minor but who:"

> 4. *Before the earlier of the filing of the petition* or the date of a hearing under G.S. 48-2-206, has *acknowledged* his paternity of the minor and
>
> . . .
>
> II. Has provided, in accordance with his financial means, *reasonable and consistent payments* for the support of the biological mother during or after the term of pregnancy, or the support of the minor, or both, which may include the payment of medical expenses, living expenses, or other tangible means of support, and has *regularly visited or communicated,* or attempted to visit or communicate with the biological mother during

or after the term of pregnancy, or with the minor, or with both[.]

N.C. Gen. Stat. § 48–3–601(2)(b)(4)(II) (emphasis added). Thus, for respondent's consent to be necessary for the granting of a petition for a direct placement adoption of Steven, respondent must have, before the filing of the adoption petition: (1) acknowledged paternity of the child; (2) provided reasonable and consistent financial support for the mother or the child, during or after the pregnancy; and (3) regularly visited or communicated with the mother, during or after the pregnancy, or with the child, or attempted to do so. *Id.; In re Adoption of Byrd*, 354 N.C. 188, 194, 552 S.E.2d 142, 146 (2001).

Pursuant to N.C. Gen. Stat. § 48-2-202 (2011), adoption proceedings are heard by the trial court without a jury. Accordingly, in our review of a trial court's order resulting from an adoption proceeding we must " 'determine whether there was competent evidence to support [the trial court's] findings of fact and whether its conclusions of law were proper in light of such facts.' " *In re Adoption of Shuler*, 162 N.C. App. 328, 330, 590 S.E.2d 458, 460 (2004) (quoting *In re Adoption of Cunningham*, 151 N.C. App. 410, 413, 567 S.E.2d 153, 155 (2002)). We are bound by the trial court's findings of fact if the findings are supported by competent evidence, "even if there is evidence to the contrary." *Id.* In our review of the evidence, "we defer to the trial court's determination of witnesses' credibility and the weight to be given their testimony." *Id.* at 331, 590 S.E.2d at 460. Although the trial court's order at issue here is interlocutory, we have previously recognized that where a trial court has determined whether a putative father's consent was necessary for the granting of an adoption petition the trial court's order affects a substantial right and is immediately appealable. *Id.* at 330, 590 S.E.2d at 460.

Petitioners first argue that the trial court erred in concluding that respondent acknowledged his paternity of Steven before the filing of the petition for adoption, as is required by N.C. Gen. Stat. § 48–3–601(2)(b)(4). Specifically, petitioners argue that: (1) respondent cannot rely on the actions of third parties to demonstrate compliance with section 48-3-601; and (2) respondent's request for a blood test to determine paternity "legally voids" any acknowledgement of paternity he may have made. We disagree.

### A. Benefit of Third-Party Actions

In concluding that respondent acknowledged paternity of Steven, the trial court relied, in part, on the finding that respondent's mother

made a phone call to DSS in which she informed DSS that her son believed he was Steven's father. Petitioners argue that our Supreme Court has expressly rejected a putative father's reliance on third-party efforts to meet the requirements of N.C. Gen. Stat. § 48–3–601 and cite the Supreme Court of North Carolina's decision in *Byrd*, 354 N.C. at 197, 552 S.E.2d at 148. We conclude petitioners' reliance on *Byrd* is misplaced.

In *Byrd*, our Supreme Court expressly rejected reliance on "attempts or offers *of support*, made by the putative father or another on his behalf," for meeting the support requirements of N.C. Gen. Stat. § 48–3–601. *Id.* (emphasis added). The Court prefaced this conclusion by noting that while " 'attempted' " communications satisfy the requirements of section 48–3–601(2)(b)(4)(II), *attempts* of *support* do not. *Id.* at 196, 552 S.E.2d at 148. Acknowledgment of paternity, support, and visitation or communication are distinct requirements under N.C. Gen. Stat. § 48–3–601. *Byrd* did not prohibit reliance on a third-party's statements as evidence of whether a putative father acknowledged paternity. Indeed, the Court noted that the biological father bought clothing for the child and a money order for the biological mother and requested that a third party forward the gifts to the biological mother. 354 N.C. at 197, 552 S.E.2d at 149. The Court rejected reliance on these gifts as evidence of the putative father's support because they were mailed to the mother *after* the petition for adoption was filed; the clothing and money order "arrived too late." *Id.*

As to a biological father's acknowledgement of paternity, the *Byrd* Court concluded that acknowledgment "may be made orally or in writing, or may be demonstrated by the conduct of the putative father." *Id.* at 195, 552 S.E.2d at 147. Thus, *Byrd* does not prohibit consideration of a third party's statements as evidence of a putative father's acknowledgement of paternity. We conclude the trial court properly considered the phone call placed by respondent's mother to DSS, made on respondent's behalf, as evidence of respondent's acknowledgement of paternity under N.C. Gen. Stat. § 48–3–601(2)(b)(4). Petitioners' argument is overruled.

**B. Request for Blood Test**

Next, petitioners argue that respondent's request for a blood test to determine his paternity "legally voids" any acknowledgement of paternity he may have made. Petitioners contend that a putative father does not request blood testing unless parentage is at issue, and

IN RE S.K.N.

[224 N.C. App. 41 (2012)]

parentage is not at issue if the putative father has acknowledged paternity. The text of N.C. Gen. Stat. § 48–3–601 demonstrates the fallacy of this argument. Section 48–3–601(2)(b) provides that a petition for adoption may not be granted unless consent has been provided by "[a]ny man who may *or may not be the biological father*" but who meets the other requirements of the statute. N.C. Gen. Stat. § 48–3–601(2)(b) (emphasis added). Thus, the statute providing a means to establish whether a putative father must consent to an adoption contemplates that the putative father may not know whether he is the biological father.

Petitioners' argument is also contradicted by our Supreme Court's decision in *Byrd*. In *Byrd*, when the biological father filed a complaint for custody of the child he "moved for a blood test to determine parentage, and he requested that his complaint for custody and offer of support be summarily dismissed if he was determined not to be the child's biological father." 354 N.C. at 192, 552 S.E.2d at 145. The trial court granted the motion for the blood test, and the results confirmed his paternity. *Id.* at 192, 552 S.E.2d at 146. Despite the fact that the respondent "conditioned his acknowledgement upon proof of a biological link" after an initial period of unconditional acknowledgement, our Supreme Court concluded the biological father satisfied the acknowledgement requirement of N.C. Gen. Stat. § 48–3–601(2)(b)(4). *Id.* at 195-96, 552 S.E.2d at 147. Consequently, we reject petitioners' argument that respondent's request for a blood test to confirm his paternity of Steven voided his acknowledgment of paternity.

### C. Findings of Fact

DSS, as an *amicus curiae*, further argues that the trial court's findings of fact 21 and 28 are not supported by competent evidence. We disagree.

In these findings of fact, the trial court found that on 18 or 19 August 2009 respondent told his mother and his stepmother, unconditionally and unequivocally, that he believed Steven was his child and that on 19 August 2009 respondent's mother called DSS about Steven on behalf of respondent. Our review of the record reveals that these findings of fact are supported by competent evidence. DSS concedes that respondent, his mother, and his stepmother testified to these events, but DSS argues against the credibility of that testimony. We must defer to the trial court's determination of witness credibility and uphold these findings of fact as they are supported by competent evidence. *See Shuler*, 162 N.C. at 330-31, 590 S.E.2d at 460.

DSS additionally argues that respondent's statements to his mother and his stepmother were insufficient to support the trial court's conclusion that he acknowledged paternity of Steven. This argument depends on concluding that the trial court could not consider the phone call placed by respondent's mother to DSS on respondent's behalf because respondent cannot claim the benefit of third-party actions. We have rejected that argument above. The trial court properly considered respondent's statements to his mother and stepmother and the phone call by respondent's mother to DSS. These findings of fact are supported by competent evidence, and the trial court did not err in concluding that, under the facts of this case, they were a sufficient acknowledgment of paternity pursuant to N.C. Gen. Stat. § 48–3–601(2)(b)(4).

### D. Time Periods for Determining Compliance with N.C. Gen. Stat. § 48–3–601(2)(b)(4)

Next, petitioners' argue that the trial court erred by not analyzing the same time period in determining whether the putative father complied with the acknowledgment requirement of N.C. Gen. Stat. § 48–3–601(2)(b)(4) as it did in determining if respondent met the financial support and the visitation or communication requirements of subsection 48–3–601(2)(b)(4)(II). We disagree.

The trial court determined that respondent acknowledged paternity of Steven by his actions between the time of his discovery of Steven's birth (and the fact that Ms. Godwin had been pregnant) on 18 August 2009, and the filing of petitioners' petition for adoption, on 20 August 2009, approximately a two-day time period. When determining whether respondent provided sufficient financial support to or visited or communicated with Steven or Steven's mother, the trial court considered respondent's actions over the entirety of Ms. Godwin's pregnancy. This, petitioners contend, was an application of different standards for the determination of the acknowledgment, support, and communication requirements and was a violation of their constitutional due process rights. Petitioners argue that the time period for analyzing compliance with the statute must be the same with regard to each statutory requirement.

Petitioners do not specify whether their due process argument is based on rights guaranteed under our federal constitution or our state constitution, or both. Regardless, we do not reach their constitutional argument as petitioners failed to raise the issue in the trial court, and we may decline to address it when raised for the first time

during appeal. *Anderson v. Assimos*, 356 N.C. 415, 416, 572 S.E.2d 101, 102 (2002). This is particularly so where we can resolve the issue on nonconstitutional grounds. *Id.* We conclude that petitioners' argument that different time periods cannot be considered when analyzing the sufficiency of respondent's actions for compliance with the acknowledgement, support, and communication requirements of section 48–3–601(2)(b)(4) is unsupported by caselaw or the language of the statute. Petitioners cite no caselaw expressly prohibiting the determination of the sufficiency of respondent's actions establishing an acknowledgement of paternity by analyzing a time period different from the time period in which the court considers the sufficiency of respondent's actions for establishing the support and communication requirements of the statute. Rather, petitioners contend that the two-day time period at issue here was not a "substantial and sufficient amount of time" as contemplated by our Supreme Court in *Byrd*, 354 N.C. at 195, 552 S.E.2d at 147. Yet, the Court concluded in *Byrd* that, there, the respondent had unconditionally acknowledged his paternity "for a substantial and sufficient amount of time *after initially learning of the pregnancy*." *Id.* (emphasis added). We note that in *Byrd* the father was aware of the pregnancy for nearly its entire term, but in the absence of caselaw prohibiting the analysis of different periods of time for each of the elements, we are not persuaded by petitioners' argument.

Nor do we find support for petitioners' argument in the language of the statute. Indeed, our analysis of section 48–3–601(2)(b)(4) leads us to a contrary conclusion. Initially, we note that the time period set by the statute in consideration of all actions, is the period before the filing of the petition for adoption or a hearing held pursuant to N.C. Gen. Stat. § 48–2–206. N.C. Gen. Stat. § 48–3–601(2)(b)(4). Additionally, the acknowledgement requirement appears in subsection 48–3–601(2)(b)(4) while the support and communication requirements appear in a separate paragraph, subsection 48–3–601(2)(b)(4)(II). *Id.* The language of subsection 48–3–601(2)(b)(4)(II) provides that the support and the communication requirements may be met by actions intended to benefit the mother or the child and that these actions may occur during or after pregnancy. Finally, subsection 48–3–601(2)(b)(4)(III), which is not at issue here, provides that when a putative father's acknowledgement of paternity and his marriage to the mother are used to establish the necessity of his consent to the adoption, the marriage must occur *after* the child's birth. N.C. Gen. Stat. § 48–3–601(2)(b)(4)(III). This suggests that analysis

of different time periods may apply to the determination of each statutory requirement.

Under petitioners' logic, a putative father's acknowledgement of paternity *during* the mother's pregnancy and his marriage to the mother *after* the pregnancy could not establish the need for his consent. We cannot conclude that the legislature intended such an illogical result. *See James River Equip., Inc. v. Tharpe's Excavating, Inc.*, 179 N.C. App. 336, 342, 634 S.E.2d 548, 553 (stating that a statutory interpretation resulting in an illogical result is not permitted as it likely would not reflect the intent of the legislature), *appeal dismissed and disc. review denied*, 361 N.C. 167, 639 S.E.2d 650 (2006). Thus, we conclude that the statute contemplates that different time periods may be considered when determining if the putative father's actions establish the necessity of his consent to the adoption. The trial court did not err in doing so here.

### E. Knowledge of the Pregnancy

Next, petitioners argue that the trial court erred as a matter of law in concluding that respondent satisfied the support and communication requirements of N.C. Gen. Stat. § 48–3–601(2)(b)(4)(II) because his actions were made without the knowledge that Ms. Godwin was pregnant. We disagree.

In its order, the trial court concluded that respondent satisfied the support requirement of the statute in that he "provided reasonable and consistent support" for Ms. Godwin and Steven during Ms. Godwin's pregnancy by paying the monthly payment for their residence and contributing to utility and other daily expenses. The order additionally provided that respondent satisfied the visitation or communication requirement of the statute in that he and Ms. Godwin lived together during and after Ms. Godwin's pregnancy. The trial court concluded, however, that these actions by respondent were made "[u]nwittingly and unknowingly[.]"

Petitioners contend that in order to satisfy the requirements of section 48–3–601(2)(b)(4)(II), respondent's actions had to be the result of a conscious and deliberate choice, not a matter of happenstance. Petitioners cite no legal authority that expressly requires respondent to have acted with the knowledge that Ms. Godwin was in fact pregnant in order to comply with the statute. Indeed, the statute provides that the support and communication may be provided to either the mother *or* to the child, before or after pregnancy, and does not require knowledge of the pregnancy when doing so. N.C. Gen.

**IN RE S.K.N.**

[224 N.C. App. 41 (2012)]

Stat. § 48–3–601(2)(b)(4)(II). But, petitioners argue their interpretation of the statute requiring such knowledge is supported by our Supreme Court's statement in *Byrd* that the Court believed the legislature intended the subsections of 48–3–601 "to protect the interests and rights of men who have demonstrated paternal responsibility . . . ." 354 N.C. at 194, 552 S.E.2d at 146. We discern no conflict between the Supreme Court's decision in *Byrd* and the trial court's conclusion that respondent's actions could be sufficient under section 48–3–601(2)(b)(4)(II) despite respondent's lack of knowledge that Ms. Godwin was pregnant. The record establishes that despite respondent's inquiries, Ms. Godwin repeatedly denied that she was pregnant and that she went to great lengths to conceal her pregnancy. Despite her denials, respondent continued to provide support to and reside with Ms. Godwin both during her pregnancy and after she secretly gave birth to Steven. Were we to adopt petitioners' logic, a biological mother could use fraud and deception to conceal her pregnancy in order to avoid the necessity of a biological father's consent to the adoption of their child. To permit such a result would contradict our Supreme Court's conclusion in *Byrd* that the legislature "did not intend to place the mother in total control of the adoption to the exclusion of any inherent rights of the biological father." 354 N.C. at 196, 552 S.E.2d at 148. The trial court did not err in concluding that respondent satisfied the support and communication requirements of N.C. Gen. Stat. § 48–3–601(2)(b)(4)(II), and petitioners' argument is overruled.

## Conclusion

For the reasons stated above, we hold the trial court did not err in concluding that respondent satisfied the requirements of N.C. Gen. Stat. § 48-3-601, thereby necessitating his consent for the adoption of his son Steven. The trial court's order is affirmed.

AFFIRMED.

Judges BRYANT and STEELMAN concur.